The Honorable Sharon Priest Secretary of State State Capitol Little Rock, Arkansas 72201-1094
Dear Ms. Priest:
This is in response to your request for an opinion on two questions regarding the conduct of exit polling activities. Specifically, you pose the following two questions:
 1. Arkansas Code Annotated 7-5-309(a) prohibits any person from standing within six feet of the voting booths. Is this the only statute that applies to exit polling activities?
2. Is this applicable to electioneering as well?
RESPONSE
In my opinion the statute you reference, A.C.A. § 7-5-309(a), specifically A.C.A. § 7-5-309(a)(4) (Supp. 1999), is the only statute that applies to exit polling activities in every instance. The provisions of A.C.A. § 7-1-103(9)(A)(B) and (C) (Supp. 1999), which restrict "electioneering" activity, do not, in my opinion, apply to exit polling activities. One other statute, A.C.A. § 7-5-521, applies to activities near "voting machines" and has some applicability to exit polling in those precincts utilizing voting machines.
The words "exit polling" are not mentioned anywhere in the Arkansas Code. The statute you cite, A.C.A. § 7-5-309, specifically subsection (a)(4) (Supp. 1999) provides as follows:
 No person other than the election officials and those admitted for the purpose of voting shall be permitted within the immediate voting area, which shall be considered as within six feet (6') of the voting booths, except by authority of the election officials and then only when necessary to keep order and enforce the law.
This statute would obviously restrict anyone wishing to conduct exit polling from the area within six feet of the voting booths. Your question is whether this is the only statutory restriction against such activity.
I have found no other statutory provision that applies expressly to the conduct of exit polling. The conduct of "electioneering," which you mention in your second question, is addressed in A.C.A. § 7-1-103(a)(9)(A)(B) and (C) (Supp. 1999), as follows:
 (9)(A) No election official acting in his official capacity shall do any electioneering on election day or any day on which early voting is allowed. Except as provided in subdivisions (B) and (C) of this subdivision (a)(9), no person shall hand out or distribute or offer to hand out or distribute any campaign literature or any literature regarding any candidate or issue on the ballot, solicit signatures on any petition, solicit contributions for any charitable or other purpose or do any electioneering of any kind whatsoever in the building or within one hundred feet (100') of the primary exterior entrance used by voters to the building containing the polling place on election day.
 (B) During early voting days, no person shall hand out or distribute or offer to hand out or distribute any campaign literature or any literature regarding any candidate or issue on the ballot, solicit signatures on any petition, solicit contributions for any charitable or other purpose, or do any electioneering of any kind whatsoever during early voting hours in the building or within one hundred feet (100') of the primary exterior entrance used by voters to the building containing the early voting site nor engage in those activities with persons standing in line to vote whether within or without the courthouse.
 (C) When the early voting occurs at a facility other than the county clerk's office, no person shall hand out or distribute or offer to hand out or distribute any campaign literature or any literature regarding any candidate or issue on the ballot, solicit signatures on any petition, solicit contributions for any charitable or other purpose, or do any electioneering of any kind whatsoever in the building or within one hundred feet (100') of the primary exterior entrance used by voters to the building containing the polling place.
This statute prohibits several different activities by all persons. It prohibits the handing out or the offering to hand out campaign literature, the solicitation of signatures on petitions, charitable solicitations or the solicitation of contributions for other purposes and "electioneering of any kind." This statute, in my opinion, does not proscribe "exit polling." "Exit polling" does not involve the distribution of "campaign literature." It does not involve the solicitation of signatures on a petition. It does not seek contributions for charitable or other purposes. The most relevant question is whether "exit polling" can be classified as "electioneering of any kind." In my opinion the answer to this question is "no."
"Electioneer" has been defined as meaning "to take an active part in an election; to work for the election of a candidate or party." WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY (7th Ed. 1972 at 266). See also, Op. Att'y Gen. 93-306. In addition, in Op. Att'y Gen. 78-077, it is stated that the term "electioneering" "refers to espousing the cause of a candidate or issue on the day of election." It has been stated by at least some officials that the term "electioneering" does not include exit polling activities. See, e.g., Kentucky Op. Att'y Gen. 92-73 ("[w]e do not read the exclusion of exit polling to abridge the scope of electioneering, since exit polling occurs after a voter has cast his ballot and could not in any sense be deemed an effort to influence the voter's decision").
It is my opinion, similarly, that "exit polling" does not fit within the definition of "electioneering," and therefore is not prohibited within the area described in A.C.A. § 7-3-103(a)(9).
One other statute is of potential relevance. Section 7-5-521(c) (Supp. 1999) applies to the method of voting utilizing "voting machines." It provides that "[a]fter the opening of the polls, the election officials shall not allow any person to pass to the part of the room where the machine is situated, except for the purposes of voting." This limitation may, or may not, depending upon the voting room, be more restrictive than the six-foot limitation set out in A.C.A. § 7-5-309(a)(4). In any event, § 7-5-521(c) only applies to polling places employing "voting machines."[1]
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] It should be noted that "voting machines" are distinguishable from "electronic voting systems." See A.C.A. §§ 7-5-601 to -615.